UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS HINSON,

    Plaintiff,

v.                                     Case No.: 8:18-CV-1499-VMC-AAS

UNITED STATES OF AMERICA,

    Defendant.

_____

**PLAINTIFF'S AMENDED RULE 26 (a) (2) DISCLOSURE OF EXPERT TESTIMONY**

The Plaintiff, THOMAS HINSON, by and through his undersigned attorney, and pursuant to Rule 26 (a) (2), of the Federal Rules of Civil Procedure, makes his Amended Disclosure of Expert Testimony as follows:

1. The identity of the witnesses the Plaintiff may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705, are as follows:

    a) JAMES J. LO, M.D., Emergency Physician at Mease Dunedin Hospital, 601 Main Street, Dunedin, FL 34698. Dr. Lo provided medical care, evaluation, and treatment in the emergency department for the injuries THOMAS HINSON sustained as a result of the subject incident. Dr. Lo is expected to testify at trial on the following subject matters: THOMAS HINSON'S presenting complaints in the emergency department; discharge recommendations and instructions; and care rendered in the emergency department and the necessity of same.

    b) MICHAEL HELDRETH, D.C., Chiropractic Physician, Total Vitality Medical Group, 24945 US Highway 19 North, Clearwater, FL 33763. Dr. Heldreth provided chiropractic care and treatment for the injuries THOMAS HINSON sustained as a result of the subject

[16-PI-1333/2283917/1]



incident. Dr. Heldreth is expected to testify at trial on the following subject matters: the nature and extent of THOMAS HINSON'S injuries; the physical therapy and chiropractic care and treatment provided by him; the patient's progress; diagnosis; prognosis; his referral of his patient to a specialist and the necessity therefore; the necessity and reasonableness of the care rendered and the costs of the care provided; future chiropractic care needs and daily life activity restrictions. It is anticipated that Dr. Heldreth will opine that the care and treatment provided at Total Vitality Medical Group for those injuries was reasonable, necessary and related to the motor vehicle collision, that the expenses incurred were reasonable and necessary, and that his referral to a medical specialist was reasonable and necessary.

c) SHERYL HAYNES, D.O., Total Vitality Medical Group, 24945 US Highway 19 North, Clearwater, FL 33763. Dr. Haynes provided medical care, evaluation and treatment for the injuries THOMAS HINSON sustained as a result of the subject incident, as well as supervised her patient's care while under chiropractic care at Total Vitality Medical Group. Dr. Haynes is expected to testify at trial on the following subject matters: the nature and extent of THOMAS HINSON'S injuries; diagnosis; prognosis; her referral of her patient to a specialist and the necessity therefore; the necessity and reasonableness of the care rendered and the costs of the care provided; future chiropractic care needs and daily life activity restrictions. It is anticipated that Dr. Haynes will opine that the care and treatment provided at Total Vitality Medical Group for those injuries was reasonable, necessary and related to the motor vehicle collision, that the treatment expenses were reasonable and necessary that the referral to a medical specialist was reasonable and necessary.

d) MOHIT BANSAL, M.D., Comprehensive Spine Institute, 1988 Gulf to Bay Boulevard, Clearwater, FL 33765. Dr. Bansal is an orthopedic surgeon who provided medical care, evaluation and treatment for the injuries THOMAS HINSON sustained as a result of the subject incident, including the performance of a shoulder surgery on February 10, 2017. Dr. Bansal is expected to testify at trial on the following subject matters: the nature and extent of THOMAS HINSON'S injuries; the nature and extent of any aggravation of a pre-existing medical condition; the causation of those injuries and aggravations by the subject incident; the permanency of those injuries and aggravations; diagnosis; differential diagnosis; prognosis; the specific medical and surgical care and treatment provided by him and the necessity of same; medical and surgical care and treatment to be rendered in the future; the necessity and reasonableness of the care rendered and the costs of the care provided; future care needs; daily life activity restrictions; anticipated effects of the injuries into the future; and disabling effects of the injuries on the patient's personal life as well as occupational life, including reasonable restrictions on work activities, as well as his interpretation of the diagnostic studies performed on the Plaintiff. It is anticipated that Dr. Bansal will opine that: THOMAS HINSON suffered personal injuries to his right shoulder and right knee as a direct result of the subject incident; suffered aggravation of pre-existing medical arthritic condition of his right knee as a direct result of the subject incident; that those injuries to his shoulder and knee are permanent injuries to a reasonable degree of medical probability; that the care and treatment he received by Dr. Bansal for those injuries and aggravations were reasonable, necessary and related to the injuries sustained in the motor vehicle collision; that the bills incurred for Dr. Bansal's care and treatment were reasonable and necessary expenses;

that he will need future medical care and treatment for his injuries at certain costs to a reasonable degree of medical certainty; that his injuries have in the past, and will in the future, cause him pain and discomfort which will adversely impact his daily life activities; and his ability to work at his chosen occupation, and that his injuries have caused him certain disabilities and impairments. Further, Dr. Bansal will opine, and his medical records reflect, that:

The Plaintiff was involved in a motor vehicle collision on November 7, 2016;

On 1/24/2017 the Plaintiff presented to Comprehensive Spine Institute for an initial visit with Dr. Bansal with a chief complaint of right shoulder pain and right knee pain;

On that initial visit Dr. Bansal performed a review of systems, history and physical examination and evaluation and reviewed a right shoulder MRI performed at Palm Harbor MRI on 1/5/2017 and a right knee MRI performed at Palm Harbor MRI on 1/5/2017;

Dr. Bansal personally reviewed the right shoulder MRI which revealed to him a rotator cuff tear as well as biceps tendonitis and the MRI of the right knee revealed to him significant arthritic changes with an extruded meniscus and a previous meniscectomy with medial and lateral tibia plateau edema;

Dr. Bansal's assessment on that date was right shoulder rotator cuff tear and biceps tendinopathy and right knee meniscal tear and osteoarthritis;

On the initial visit shoulder surgery was discussed with the patient;

On the initial visit Dr. Bansal felt that his patient's right shoulder injury was directly related to his traumatic motor vehicle accident, and that the patient's right knee pain was likely an exacerbation of severe osteoarthritis;

On 2/6/2017 Dr. Bansal dispensed a shoulder immobilizer to his patient for the upcoming right shoulder surgery;

On 2/10/2017 Dr. Bansal performed the following procedures on the Plaintiff at Comprehensive Surgery Center;

Right shoulder arthroscopy, arthroscopic biceps tenotony, arthroscopic medium rotator cuff repair, and subacromial decompression, his post-operative diagnosis was the same as his preoperative diagnosis, that being right shoulder rotator cuff tear and long head of the biceps tendonitis and impingement syndrome;

On 2/23/2017, Dr. Bansal evaluated the Plaintiff who was two weeks post right shoulder surgery, and started the Plaintiff on type III rehabilitation and noted that the patient cannot drive at this time. The Plaintiff continued with physical therapy visits with the last physical therapy session (#17) on June 6, 2017, at which time he was discharged;

Dr. Bansal examined and evaluated the Plaintiff on June 8, 2017 and noted that his patient was progressing very well so he continued the Plaintiff on home exercises for strengthening.

e) JED WEBER, M.D., Comprehensive Spine Institute, 1988 Gulf to Bay Boulevard, Clearwater, FL 33765. Dr. Weber is a neurosurgeon who provided medical care, evaluation and treatment for the spine injuries THOMAS HINSON sustained as a result of the subject incident, including the performance of a spinal injection. Dr. Weber is expected to testify at trial on the following subject matters: the nature and extent of THOMAS HINSON'S spinal injuries; the nature and extent of any aggravation of a pre-existing medical condition; the causation of those injuries and aggravations by the subject incident; the permanency of those injuries and aggravations; diagnosis; differential

diagnosis; prognosis; the specific medical and surgical care and treatment provided by him and the necessity of same; medical and surgical care and treatment to be rendered in the future; the necessity and reasonableness of the care rendered and the costs of the care provided; future care needs; daily life activity restrictions; anticipated effects of the injuries into the future; and disabling effects of the injuries on the patient's personal life as well as occupational life, including reasonable restrictions on work activities, as well as his interpretation of the diagnostic studies performed on the Plaintiff. It is anticipated that Dr. Weber will opine that: THOMAS HINSON suffered personal injuries to his cervical spine and lumbar spine as a direct result of the subject incident, including but not limited to cervical myelopathy and is at risk for a devastating neurologic injury; that those injuries to his cervical and lumbar spine are permanent injuries to a reasonable degree of medical probability; that the care and treatment he received by Dr. Weber for those injuries were reasonable, necessary and related to the spinal injuries sustained in the motor vehicle collision; that the bills incurred for Dr. Weber's treatment were reasonable and necessary expenses; he will need future medical care and treatment for his injuries at certain costs to a reasonable degree of medical certainty; that his injuries have in the past, and will in the future, cause him pain and discomfort which will adversely impact his daily life activities; and his ability to work at his chosen occupation, and that his injuries have caused him certain disabilities and impairments. Further, Dr. Weber will opine, and his medical records reflect, that:

The Plaintiff was involved in a motor vehicle collision on November 7, 2016;

The Plaintiff presented to Comprehensive Spine for an initial visit with Dr. Weber on 1/24/2017 with a chief complaint of neck pain with balance problems as well as low back

pain with associated right lower extremity pain. On that initial visit Dr. Weber performed a review of systems, history and physical examination and evaluation, and reviewed a cervical spine MRI performed at Palm Harbor MRI on 11/30/2016 and a lumbar spine MRI performed at Palm Harbor MRI on 11/30/2016;

Dr. Weber personally reviewed the cervical spine MRI which revealed to him the following: mild cervical kyphosis, at C2-3 there is degenerative disc disease that is mild. At C3-4 there is a disc protrusion that is small, spinal cord deformity that is mild and foraminal stenosis bilaterally that is severe. Degenerative disc disease is mild. At C4-5 there is a disc protrusion that is small to moderate in size resulting in spinal cord compression and deformity that is moderate and high signal within the cord. Degenerative disc disease is moderate. At C5-6 there is a disc protrusion that is small, foraminal stenosis on the right that is severe and mild on the left. At C6-7 there is foraminal stenosis on the left that is mild. Dr. Weber personally reviewed the lumbar spine MRI which revealed to him the following: demonstrates at L1- to a normal disc. At L2-3 there is degenerative disc disease that is mild. At L3-4 there is a herniated disc that is small and eccentric to the left with lateral recess stenosis on the left that is severe. At L4-5 there is a herniated disc which is small broad-based, facet hypertrophy which is moderate, lateral recess stenosis bilaterally that is severe and degenerative disc disease is moderate. At L5-S1 there is a disc protrusion that is small and lateral recess stenosis that is moderate to severe. Degenerative disc disease is moderate;

On the initial visit, Dr. Weber's impression and diagnosis for the Plaintiff's cervical spinal region is as follows: Cervical – patient has evidence of an early cervical myelopathy. MRI demonstrates spinal cord compression, deformity and high signal in

the spinal cord at C4-5. There is spinal cord compression and deformity at C3-4. This patient is at risk for a devastating neurologic injury. Lumbar – Patient has evidence of a lumbar radiculopathy. MRI demonstrates a disc herniation at L4-5;

Dr. Weber recommended to the Plaintiff that he undergo an interior cervical decompression, instrumentation and fusion with plating at C3-4 and C4-5. Dr. Weber also recommended a lumbar transforaminal epidural steroid injection to the L4-5 spinal region;

On 2/6/2017 Dr. Weber performed on the Plaintiff at Comprehensive Surgery Center a right L4-5 transforaminal epidural steroid injection through fluoroscopic guidance;

On 2/15/2017 Dr. Weber's records reported that his patient received relief from the lumbar injection, but that the Plaintiff has evidence of cervical myelopathy and that there was a discussion for proceeding with a cervical decompression, instrumentation and fusion.

f) CHARLES DOMSON, M.D. of Palm Harbor MRI, 32615 US Highway 19 N, Suite 4, Palm Harbor, FL 34684. Dr. Domson was the reading radiologist for the following diagnostic studies: MRI Lumbar Spine, dated November 30, 2016 and MRI Cervical Spine dated November 30, 2016. This radiologist is expected to testify at trial on the following subject matters: his respective review and interpretations of the diagnostic studies mentioned above and what is revealed by those studies, including abnormalities.

g) JOSE M. NEGRON-SOTO, M.D. of Palm Harbor MRI, 32615 US Highway 19 N, Suite 4, Palm Harbor, FL 34684. Dr. Negron-Soto was the reading radiologist for the following diagnostic studies: MRI of Right Knee dated January 5, 2017 and MRI of Right Shoulder dated January 5, 2017. This radiologist is expected to testify at trial on the

following subject matters: his respective review and interpretations of the diagnostic studies mentioned above and what is revealed by those studies, including abnormalities.

h) MICHAEL J. FOLEY, M.D., F.A.C.R, Radiographic Consultants, LLC, 101 East Kennedy Blvd., Suite 3900, Tampa, Florida 33602. Dr. Foley is a radiologist who read and interpreted the following diagnostic studies; MRI Lumbar Spine, dated November 30, 2016 and MRI Cervical Spine dated November 30, 2016 and MRI of Right Knee dated January 5, 2017 and MRI of Right Shoulder dated January 5, 2017. Dr. Foley is a witness who has been retained by Plaintiff's counsel to provide expert testimony in this case. Accordingly, he has prepared and signed a written report which is attached hereto. That report and its attachments contain the information set out in Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

2. The physicians identified in subparagraphs a-g of Paragraph 1 above are treating physicians and healthcare providers of THOMAS HINSON. They have not been retained or specially employed to provide expert testimony in this case. Therefore, under Rule 26 (a)(2)(B) of the Federal Rules of Civil Procedure, this disclosure of those treating physicians need not be accompanied by a written report.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail to: **Carolyn Tapie, Assistant United State Attorney,** 400 North Tampa Street, Suite 3200, Tampa, Florida 33602, Carolyn.B.Tapie@usdoj.gov, this 5th day of March, 2019.

/s/ *Stephen H. Haskins*
**STEPHEN H. HASKINS, ESQUIRE**
FBN: 0299790
*LUCAS| MAGAZINE*
8606 Government Drive
New Port Richey, FL 34654
Ph. (727) 849-5353; Fax (727) 845-7949
Primary Email: lucasmagazine@lucasmagazine.com

[16-PI-1333/2283917/1]