UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS HINSON,

    Plaintiff,

v.                       Case No. 8:18-cv-1499-T-33AAS

UNITED STATES OF AMERICA,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant United States of America's Motion for Partial Summary Judgment (Doc. # 39) and Motion in Limine (Doc. # 41). Plaintiff Thomas Hinson responded in opposition to the Motions. (Doc. ## 40, 42). For the reasons that follow, the Motions are denied.

**I.**   **Background**

Hinson initiated this Federal Tort Claims Act (FTCA) case against the United States on June 21, 2018. (Doc. # 1). This case involves a car accident between Hinson and a U.S. Postal Service vehicle in 2016, in which Hinson was allegedly injured. (Id.). The United States filed its Answer on August 27, 2018. (Doc. # 11).

1

The case proceeded through discovery. On February 21, 2019, the United States moved to strike Hinson's expert disclosures, including those relating to three of Hinson's treating physicians: Dr. Heldreth, Dr. Bansal, and Dr. Weber. (Doc. # 30). After the motion to strike was filed, Hinson served his amended expert disclosures. (Doc. # 39-4). But the United States still maintained these amended disclosures were insufficient. (Doc. # 34).

On April 18, 2019, the Magistrate Judge granted the United States' motion to strike. (Doc. # 36). The Magistrate Judge gave Hinson an opportunity to amend his disclosures for the various treating physicians. The Order specified that Hinson "should clarify whether each non-retained treating expert will testify only on opinions formed during their treatment of [] Hinson. If these physicians will testify based on facts learned outside their treatment relationship with [] Hinson, then [] Hinson must provide the information required under Rule 26(a)(2)(b)." (Id. at 8). The Order stated that "Hinson's amended disclosures provide adequate detail as to Dr. Bansal's and Dr. Weber's opinions and supporting facts" but also directed Hinson to "clarify that Dr. Bansal and Dr. Weber will testify only on opinions formed during their treatment of [] Hinson." (Id. at 7). Regarding Dr. Heldreth,

2

the Order explained that Hinson's amended disclosures "failed to provide an adequate summary of the specific facts and opinions to which Dr. Heldreth . . . [is] expected to testify." (Id.).

Hinson turned over his second amended disclosures on April 25, 2019. (Doc. # 39-5). Hinson disclosed that he intends for three treating physicians — Dr. Heldreth, Dr. Bansal, and Dr. Weber — to offer opinions about the causation of his injuries. Specifically, regarding Dr. Heldreth, the second amended disclosures state in relevant part: "It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Heldreth will opine that the care and treatment provided at Total Vitality Medical Group for those injuries was reasonable, necessary and related to the motor vehicle collision." (Id. at 3).

Regarding Dr. Bansal, the second amended disclosures state in relevant part: "It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Bansal will opine that: [Hinson] suffered personal injuries to his right shoulder and right knee as a direct result of the subject incident; [Hinson] suffered aggravation of pre-existing medical arthritic condition of his right knee as a direct result of the subject incident; . . . [and] the care

3

and treatment [Hinson] received by Dr. Bansal for those injuries and aggravations were reasonable, necessary and related to the injuries sustained in the motor vehicle collision." (Id. at 5-6). Finally, regarding Dr. Weber, the second amended disclosures state in relevant part: "It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Weber will opine that: [Hinson] suffered personal injuries to his cervical spine and lumbar spine as a direct result of the subject incident, including but not limited to cervical myelopathy and is at risk for a devastating neurologic injury; . . . [and] the care and treatment [Hinson] received by Dr. Weber for those injuries were reasonable, necessary and related to the spinal injuries sustained in the motor vehicle collision." (Id. at 8-9).

Now, the United States moves for partial summary judgment on the issue of whether Hinson's injuries were caused by the car accident. (Doc. # 39). In support, the United States contends that Hinson's second amended disclosures are insufficient to allow his treating physicians to opine on causation and that Hinson has no other evidence in support of causation. (Id.). The United States has also filed a Motion in Limine, seeking to prevent Dr. Heldreth, Dr. Bansal, and Dr. Weber "from providing expert testimony that [Hinson's]

4

injuries are causally related to the motor vehicle accident . . . and to prevent any of [Hinson's] treating physician experts from offering any testimony which is based upon information provided to them in anticipation of litigation or trial." (Doc. # 41 at 1).

Hinson has responded to both Motions (Doc. ## 40, 42), and the Motions are ripe for review.

## II. Legal Standard

### A. Motion in Limine

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." Id. (internal quotation marks omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation marks omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)(citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district

court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

**B.      Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260

(11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

**III. Analysis**

   **A.   Rule 26 Disclosures**

"A treating physician may testify as either a lay witness or an expert witness; however, in order to testify as an expert witness, the physician must provide the required disclosures under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C)." Sweat v. United States, No. 8:14-cv-888-T-17JSS, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015)(citations omitted). Typically, treating physicians are only required to satisfy the lower standard of Rule 26(a)(2)(C). See Bostick v. State Farm Mut. Auto. Ins. Co., No. 8:16-cv-1400-T-33AAS, 2017 WL 2869967, at *2 (M.D. Fla. July 5, 2017)("Under the plain language of Rule 26(a)(2)(B), [the plaintiff's] treating physicians were not required to provide written reports because they were not retained or specially employed to provide expert testimony.").

Pursuant to Rule 26(a)(2)(C), a party must submit an expert disclosure for any expert witness not required to submit an expert report. That expert disclosure must state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

"This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)" and "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Id. (Advisory Committee Notes to 2010 Amendment).

As the Magistrate Judge already explained in this case, "[b]ecause a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient." (Doc. # 36 at 4)(citation omitted). Indeed, "[t]estimony as to causation of an injury is not 'expert testimony' that requires expert disclosure under Rule 26." Baratta v. City of Largo, No. 8:01-cv-1894-T-EAJ, 2003 WL 25686843, at *2 (M.D. Fla. Mar. 18, 2003). "Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury." Id.

The United States argues the second amended disclosures for Dr. Heldreth, Dr. Bansal, and Dr. Weber are insufficient and, thus, these treating physicians should be precluded from testifying about the cause of Hinson's injuries. (Doc. # 39

at 6-9; Doc. # 41 at 1-2). Specifically, the United States argues that the disclosures for Dr. Heldreth, Dr. Bansal, and Dr. Weber fail to sufficiently provide "a summary of the facts and opinions to which the witness is expected to testify" under Rule 26(a)(2)(C). (Doc. # 39 at 7-8).

Regarding Dr. Heldreth, the United States argues that Hinson "has offered no facts at all that would support Dr. Heldreth's purported causation opinion, in violation of Rule 26(a)(2)(C)(ii)." (Id. at 7). The United States points out that "Dr. Heldreth did not treat [Hinson] at any point prior to the November 7, 2016 accident, nor did Dr. Heldreth review any of [Hinson]'s medical records or MRI studies from prior to November 7, 2016." (Id.).

And, regarding Dr. Bansal and Dr. Weber, the United States contends Hinson's "disclosure includes no facts that could form the basis of [Dr. Bansal and Dr. Weber's] opinions, in violation of Rule 26." (Id. at 8). The United States emphasizes that "[n]either Dr. Weber nor Dr. Bansal ever treated [Hinson] prior to the November 7, 2016 accident, nor did they review any of [Hinson]'s prior medical records or MRI studies from before the accident during the course of their treatment of [Hinson]." (Id.). Thus, the United States concludes "[b]ecause these physicians have no knowledge or

11

information regarding [Hinson]'s physical condition prior to the accident, there is no basis by which either Dr. Weber or Dr. Bansal could opine that [Hinson]'s alleged injuries were caused or aggravated by the accident (nor do [Hinson]'s disclosures identify what facts these experts considered that would support such causation opinions)." (Id. at 8-9).

But the United States cites no authority to support its contention that only treating physicians who have treated a patient before the patient's injury at issue may opine as to the cause of the patient's injury. And the Court is not persuaded that Dr. Heldreth, Dr. Bansal, and Dr. Weber could not have formed opinions as to causation of Hinson's injuries during the course of their treatment just because they did not treat him before the car accident.

Indeed, upon review of the summary of facts and opinions for each physician, the Court believes that the second amended disclosures are sufficient for Dr. Heldreth, Dr. Weber, and Dr. Bansal. This is not a situation in which the disclosure merely contains broad, general information on the treating physician and his planned testimony. See, e.g., Pugliese v. Tex. Roadhouse, Inc., No. 5:17-cv-392-Oc-PRL, 2018 WL 3757762, at *1 (M.D. Fla. Aug. 8, 2018)(finding Rule 26(a)(2)(C) disclosure inadequate because it "provide[d]

12

little more than the name and address for each provider, together with general statements such as that the witness is a 'board certified orthopedic surgeon,' and 'testimony will relate to his treatment of Plaintiff's injuries after the subject accident, his diagnosis and prognosis, and the resulting medical bills and charges'"); Jones v. Royal Caribbean Cruises, Ltd., No. 12-20322-CIV, 2013 WL 8695361, at *4 (S.D. Fla. Apr. 4, 2013)("Plaintiff's expert witness disclosures simply lists the names of his treating physicians . . . . It is therefore clear that Plaintiff did not comply with Rule 26(a)(2)(C). Indeed, the reader of Plaintiff's disclosures has no idea what opinion the doctors will offer or on what facts the doctors will base those opinions."). Rather, the descriptions in Hinson's second amended disclosures are thorough and provide a clear picture of the treatment each physician provided, what materials each physician reviewed, and the opinions each physician plans to offer at trial. (Doc. # 39-5 at 2-11).

Furthermore, in so ruling, the Court is mindful that the Rule 26(a)(2)(C) disclosure requirement is "considerably less extensive than the report required by Rule 26(a)(2)(B)" and that the Court should not require "undue detail" for such disclosures. Fed. R. Civ. P. 26 (Advisory Committee Notes to

13

2010 Amendment). Thus, the United States' Motion in Limine is due to be denied.[1] However, denial of the Motion in Limine is without prejudice, and the United States is not foreclosed from challenging Hinson's experts during trial.

**B.  Causation**

"Under the FTCA, the law of the state where the alleged negligent act or omission occurred governs the rights and liabilities of the parties." Abrisch v. United States, 359 F. Supp. 2d 1214, 1226 (M.D. Fla. 2004). Because the accident at issue occurred in Florida, Florida law applies.

"Under Florida law, the Plaintiff in general bears the burden of proving causation." Rementer v. United States, No. 8:14-cv-642-T-17MAP, 2015 WL 5934522, at *2 (M.D. Fla. Oct. 9, 2015). So, Hinson "must come forward with admissible evidence on the issue of medical causation in order to demonstrate that there is a material issue of fact that should preclude summary judgment." Id. "In the negligence context under Florida law, 'lay testimony is legally insufficient to support a finding of causation where the medical condition

---

[1] To the extent the United States' Motion in Limine can be interpreted as a Daubert motion, the Motion is due to be denied as untimely. The Amended Case Management and Scheduling Order set a May 1, 2019, deadline for Daubert motions. (Doc. # 29). But the Motion in Limine was not filed until June 5, 2019. (Doc. # 41).

14

involved is not readily observable.'" Id. (citation omitted). And "Florida courts have held that a plaintiff's back pain and other soft tissue injuries are not 'readily observable' medical conditions." Id. Thus, expert medical testimony is required.

The United States argues that, because the treating physicians' anticipated testimony about causation should be excluded, Hinson cannot present any evidence on causation. (Doc. # 39 at 9-12). Thus, the United States seeks entry of partial summary judgment in its favor on the issue of causation. (Id. at 11-12).

But, as discussed above, Hinson's treating physicians may testify as to causation and their opinion that Hinson's injuries were caused by — or at least aggravated by — the car accident at issue. So, there is a genuine issue of material fact as to causation. Therefore, the United States' Motion for Partial Summary Judgment is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant United States of America's Motion in Limine (Doc. # 41) is **DENIED WITHOUT PREJUDICE.**

(2) Defendant United States of America's Motion for Partial Summary Judgment (Doc. # 39) is **DENIED.**

**DONE and ORDERED** in Chambers in Tampa, Florida, this 3rd day of July, 2019.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE